UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Case No. 2:16-CR-74 JVB |
| ) | |
| AIRRION S. BLAKE ) | |

**OPINION AND ORDER**

This matter is before the Court on the "Motion to Dismiss and Affirmative Defense of Entrapment," filed by the defendant, Airrion S. Blake. (DE 39.) For the reasons set forth below, the motion is **DENIED**.

**A. Background**

On May 20, 2016, the defendant, Airrion S. Blake, was charged with making a false, fictitious, or fraudulent claim upon and against the Internal Revenue Service ("IRS") in violation 18 U.S.C. § 287 (Count 1) and theft of government money in violation of 18 U.S.C. § 641 (Count 2). (DE 1.)

As to Count 1, the indictment alleges that Blake established an Employer Identification Number ("EIN") with the IRS for an estate in his name, the Airrion Socrates Blake Estate, and caused himself to be named as the fiduciary of the Estate. (*Id*. at 2.) In March 2010, Blake obtained a post office box in Munster, Indiana, for the Estate of Airrion S. Blake Holding Group and named himself as president on the application forms. (*Id*.) In November 2012, Blake opened a checking account in Munster on behalf of the Estate and listed himself as one of the account owners. (*Id*.) Around October 29, 2012, Blake allegedly prepared and filed a false and

fictitious Form 1041 tax return for the Estate and fraudulently claimed a tax refund in the amount of $149,358.35. (*Id*. at 2–3.) On February 5, 2013, the United States Treasury Department issued an income tax refund of $149,358.35 and sent the check to the post office box associated with the Estate. (*Id*. at 3.)

As to Count 2, the indictment alleges that Blake willfully and knowingly stole the tax refund money described above and converted it to his own use. (*Id*. at 4.)

Blake moved to dismiss the indictment, arguing that "the Government did not have sufficient evidence to support a probable cause to continue to prosecute the charges levied against the defendant." (DE 39 at 4.) Blake also argues that dismissal is warranted because "the Government's charging documents do not reflect that they (Government) obtained the information from the IRS and the U.S. Treasury Department which set forth the requirements under *Brady v. Maryland*." (*Id*. at 2.) In the event that the indictment is not dismissed, Blake requests that he be allowed to present an entrapment defense because he was allegedly "induced, encouraged, or led to believe that he was **not** committing a crime or was induced to go forward with an act that led to the criminal charges, in that, the Government sent a check notwithstanding the WORD-STAMP on the Form 1041 trust." (*Id*. at 5.) The Government opposes the motion. Blake has not filed a reply.

**B. Discussion**

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment shall "be a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ." A grand jury indictment serves to protect rights granted by the Fifth Amendment, namely

2

limiting the federal government's power to hold someone to answer for a felony unless on a grand jury indictment, and the Sixth Amendment, which grants persons accused of a crime the right to be informed of the nature and cause of the accusation. *See Russell v. United States*, 369 U.S. 749, 760–61 (1962); *United States v. Glecier*, 923 F.2d 496, 499 (7th Cir. 1991). "An indictment is constitutionally sufficient and satisfies Fed. R. Crim. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so [he] may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997) (citations omitted); see also *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995). An exhaustive recounting of the facts surrounding the crime is not required. *Agostino*, 132 F.3d at 1189. When reviewing a motion to dismiss a criminal indictment, the court must assume the facts alleged in the indictment are true and "must view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). Dismissing an indictment is an extraordinary measure. *See*, e.g.*, United States v. Morrison*, 449 U.S. 361, 363 (1981) (concluding the dismissal of an indictment was unwarranted absent a constitutional infringement that substantially prejudiced defendant's case); *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997) ("Because the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step.").

      Here, Blake does not argue that the indictment is facially invalid; rather, he argues that the indictment should be dismissed because the Government lacked probable cause to levy the charges against him. Specifically, Blake contends that the fact that he placed a "WORD-STAMP" with the phrase "VOID WHERE PROHIBITED BY LAW" on the Form 1041 tax

3

return documents "negated any evidence that [he] was pursuing a criminal act" and, as such, there was no reasonable basis for his arrest and/or prosecution. (DE 39 at 4.) The Court agrees with the Government that Blake's argument is a non-starter. The Supreme Court has made it clear that there is a "fundamental and historic commitment" to entrust probable cause findings to grand juries:

> This Court has often recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a serious crime. An indictment fair upon its face, and returned by a properly constituted grand jury, we have explained, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged. And conclusively has meant, case in and case out, just that. We have found no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof. To the contrary, the whole history of the grand jury institution demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard. The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.

*Kaley v. United States*, 134 S. Ct. 1090, 1097–98 (2014) (internal quotations, alterations, and citations omitted); *United States v. Schreiber*, 866 F.3d 776, 782 (7th Cir. 2017) ("grand jury indictment conclusively establishes probable cause"); see also *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) ("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence.") (citation omitted). The issuance of the indictment itself establishes that the grand jury found probable cause to proceed with the charges in this case. Thus, Blake's probable cause argument is meritless.

Blake also argues that the indictment should be dismissed because the Government

allegedly "has not pursued the proper requirements under *Brady v. Maryland*":

> The Government did not request information on any other trust other than the one that defendant allegedly set up using mostly *lower-cased* letters for the named trust and neglected searching or requesting information on any *other* trust that might appear when using all UPPER-CASED letters or inquiry as to **any** trust that was or may be held by the U.S. Treasury Department under the name of the defendant.

(*Id*. at 6)  The Government responds by stating that it has complied with its *Brady* obligations, that it is not required to assist Blake by furnishing him with information that should be readily available to him, that Blake has not pointed to any specific exculpatory materials, and that, even if there was a *Brady* violation, it would not warrant dismissal of the indictment because Blake has not suffered any prejudice.

"Under *Brady* and its progeny, the government has the affirmative duty to disclose evidence favorable to a defendant and material either to guilt or punishment." *United States v. Fallon*, 348 F.3d 248, 251 (7th Cir. 2003); *see* generally *Brady v. Maryland*, 373 U.S. 83 (1963). To establish a *Brady* violation, a defendant must show: "(1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material." *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) (citation omitted).  "Evidence is suppressed when 'the prosecution fail[s] to disclose the evidence in time for the defendant to make use of it' and 'the evidence was not otherwise available to the defendant through the exercise of reasonable diligence.'" *United States v. Shields*, 789 F.3d 733, 746–47 (7th Cir. 2015) (citing *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005)); see also *White*, 970 F.2d at 337 ("Evidence cannot be regarded as 'suppressed' by the government when the defendant has access to the evidence before trial by the exercise of reasonable diligence.").

5

While the Government has an affirmative obligation to disclose *Brady* material, the defendant must establish an alleged violation "by offering more than mere speculation or unsupported assertions that the Government suppressed evidence." *Shields*, 789 F.3d at 747 (citing *United States v. Jumah*, 599 F.3d 799, 808–09 (7th Cir. 2010)).

It is unclear why Blake believes evidence of other trusts set up in his name would be exculpatory and material in this case, but even if it was, his request to dismiss the indictment would still fail. Blake has not demonstrated that any evidence has been suppressed by the Government. Suppression occurs under *Brady* only if the evidence arrives too late to make use of it during trial. Here, this case is not set to be tried until March 19, 2018,[1] so claiming a *Brady* violation at this point is premature. *See, e.g., Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017) ("Our cases, however, have consistently held that *Brady* does not require the disclosure of favorable evidence prior to trial."); *Armstrong v. Daily*, 786 F.3d 529, 552 (7th Cir. 2015) (*Brady* obligations are satisfied when exculpatory evidence is disclosed any time before trial or even during trial); *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (finding that suppression did not occur when exculpatory evidence was discovered during trial because the defendant was still able to make use of it).

Additionally, even assuming that the Government ultimately fails to provide Blake with evidence of other trusts in his name, it would not be considered suppression under *Brady* unless Blake was able to show that the specific materials were otherwise unavailable to him through the exercise of reasonable diligence. Without more, Blake's vague assertion that the Government

---

[1] When Blake filed the instant motion on August 17, 2017, the trial was set for September 5, 2017, but the trial date was later continued. (See DE #27 & DE #49.) However, the Court's analysis remains the same, as the motion was filed well before either trial setting.

"neglected searching or requesting information on any *other* trust that might appear when using UPPER-CASED letters or inquiry as to **any** trust that was or may be held by the U.S. Treasury Department under the name of the defendant" provides no basis for a finding of suppression; rather, it would stand to reason that, if Blake has set up additional trusts, information related to those trusts is fully accessible to him. *See Shields*, 789 F.3d at 746–47 (finding no *Brady* violation for the failure to disclose a previous civil rights lawsuit against the defendant's arresting officer because the lawsuit was publicly available and noting that "a bare assertion that the prosecution suppressed evidence, without more, is not sufficient to prove a *Brady* violation"); *White*, 970 F.2d at 337 (evidence was not suppressed because the defendants had access to the bankruptcy files from which their former attorney copied the documents at issue). Finally, the Court notes that the Seventh Circuit has never taken the "extreme step of dismissing criminal charges against a defendant because of government misconduct" as "[g]ranting such relief in the absence of prejudice to a defendant would be to confer an unearned windfall." *United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006) (citations omitted). Blake has yet to be tried on the matter, so he has not been prejudiced by any alleged lack of disclosure. Thus, dismissal of the indictment is unwarranted on any ground raised by Blake.

As an alternative to dismissal, Blake requests that the Court instruct the jury on an affirmative defense of entrapment. Blake argues that he was not predisposed to commit false claims or theft and was "induced, encouraged, or led to believe that he was **not** committing a crime or was induced to go forward with an act that led to the criminal charges, in that, the Government sent a check notwithstanding the WORD-STAMP on the Form 1041 trust." (DE 39 at 5.) The Government opposes this request.

7

In the Seventh Circuit, "[e]ntrapment is a defense to criminal liability when the defendant was not predisposed to commit the charged crime before the intervention of the government's agents and the government's conduct induced him to commit it." *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014). A viable entrapment defense includes two elements: lack of predisposition and government inducement. *Id*. Predisposition means that a defendant was "ready and willing" to commit the crime charged and "likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." *Id*. at 442–43. Inducement has been defined as follows:

> [T]he fact that the government initiated contact with the defendant, suggested the crime, or created the ordinary opportunity to commit it is not sufficient; something more is required, either in terms of the character and degree of the government's persistence or persuasion, the nature of the enticement or reward, or some combination of these. Conduct by the government's agents amounts to inducement if, considering its character and the factual context, it creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's persuasion.

*Id*. at 443. In general, the determination of whether entrapment occurred is a question for the jury, and "whether or not an entrapment defense is available to a defendant is typically not amenable to pretrial resolution."[2] *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993). That said, an entrapment defense may only be presented to the jury if the defendant has produced some evidence of his lack of predisposition to commit the crime and inducement by the

---

[2] The issue, however, can be resolved prior to trial via a motion in limine to preclude the defense. *United States v. Blitch*, 773 F.3d 837, 844 (7th Cir. 2014). If, upon the government's motion, a defendant does not respond with "sufficient evidence that a rational jury could infer that the defendant had been entrapped," the court may decide as a matter of law that the entrapment defense is not warranted. *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012). In such an instance, the court must "accept the defendant's proffered evidence as true and not weigh the government's evidence against it." *Mayfield*, 771 F.3d at 440.

8

government. *Mayfield*, 771 F.3d at 443; *see also United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012) ("[T]o present an entrapment instruction to a jury, a defendant must be able to proffer sufficient evidence of both elements."); *United States v. Haddad*, 462 F.3d 783, 789–90 (7th Cir. 2006) (jury instruction is not warranted unless a defendant shows evidence of both inducement and predisposition). The burden of proof is not high, but there must be more than a "scintilla of evidence" of entrapment for the defense to proceed. *Plowman*, 700 F.3d at 1057.

Putting aside, for the moment, whether Blake was predisposed to commit the crimes charged,[3] it is clear that he has not presented any evidence of Government inducement. Accepting Blake's assertion as true (i.e. that the IRS sent him a refund check even though he had stamped "VOID WHERE PROHIBITED BY LAW" on the Form 1041) this fact shows, *at most*, that he was presented with an ordinary opportunity to commit a crime by cashing the check. However, he has not shown even a scintilla of evidence that the Government either initiated the contact or did anything "more" to induce him to commit a crime as is required under the law. *See, e.g., Mayfield*, 771 F.3d at 434–35 ("[I]nducement means government solicitation of the crime plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts.") Thus, Blake's motion in limine requesting that the Court instruct the jury on the affirmative defense of entrapment fails as a matter of law at this stage.

---

[3] Normally, the predisposition element is analyzed first, but "where there is insufficient evidence of inducement—either because there is no such evidence at all, or because the government did nothing more than offer a standard market deal in a sting—there is no need to consider predisposition." *Plowman*, 700 F.3d at 1057 (citing *United States v. Pillado*, 656 F.3d 754, 764–65 (7th Cir. 2011)). Of note, however, the Government has indicated that, if the Court allows an entrapment defense, it is prepared to present "evidence of multiple uncharged fraudulent tax returns as evidence of Blake's predisposition to commit the charged fraud." (DE 46 at 11.)

**C. Conclusion**

For these reasons, the "Motion to Dismiss and Affirmative Defense of Entrapment" (DE 39) is **DENIED**.

SO ORDERED on December 21, 2017.

                                                 s/ Joseph S. Van Bokkelen
                                                 JOSEPH S. VAN BOKKELEN
                                                 UNITED STATES DISTRICT JUDGE