# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

Airrion S Blake,

    Defendant.

Case No. 2:16-CR-74 JVB

## OPINION AND ORDER

After thirteen hours of deliberation, the Jury found Mr. Airrion Blake guilty of lying to the Internal Revenue Service and of stealing the government's money. Mr. Blake was represented attorney John H. Davis. Mr. Blake now believes that Davis provided him with incompetent representation and filed a pro se motion asking for a new trial. The Court appointed a new attorney for Mr. Blake, who filed a supplemental brief to Mr. Blake's motion. Having reviewed the parties' briefs, the Court denies Mr. Blake's motion.

### I.

In 2012, Mr. Blake was unemployed and broke. To remedy this situation he concocted a plan. He created the Airrion Socrates Blake Estate and filed a 1041 tax return on its behalf. Under penalty of perjury, he represented that the estate earned $300,000;[1] at the same time, he represented that the estate had no income. Next, he represented that the estate paid him $300,000 in fiduciary income. And finally, he stated that $150,000 was withheld from the estate in taxes. All of this was a lie: the estate made no money nor paid out any money, nor was any tax

---

[1] For ease of reading, the Court is rounding the dollar amounts in this order.

withheld on its behalf. Nevertheless, in the 1041 tax return, Mr. Blake requested the IRS to "refund" the "withheld" tax. Strange though it seem, the IRS issued a check to Mr. Blake.

Mr. Blake spent the money quickly. Among other things, he withdrew almost $60,000 in cash, spent $680 at Gamestop, used $10,000 on a construction project, and enjoyed $700 on a vacation to Wisconsin Dells.

The next year, Mr. Blake attempted the same scheme---indeed multiple times---but the IRS found the filings to be frivolous.

At his trial, Mr. Blake testified that he believed that the scheme was legitimate. He said he found discussions in Yahoo chatrooms explaining that everyone was entitled to their lifetime social security earnings under the theory that, upon the birth of each U.S. Citizen, the federal government established a trust for him or her, which could be cashed in at any time. He told the jury that he filed the return with a "disclaimer" at the bottom of the first page: "void where prohibited by law"; so when the government sent him the check, he thought his scheme was validated.

The jury saw otherwise and convicted him of lying to the IRS and stealing from the government.

## II.

Shortly after the trial, Mr. Blake fired Davis and moved for a new trial. He claims that Davis was incompetent. In particular, Mr. Blake believes that Davis duped him in representing him. Davis is blind but he convinced Mr. Blake that his blindness was a temporary condition. According to Mr. Blake, Davis was unable to represent him properly because he couldn't view the trial exhibits and couldn't see the jurors' faces so as to sense how his case was proceeding.

Mr. Blake also believes that Davis did not conduct proper pretrial discovery, failed to subpoena Social Security records, believed in bizarre sovereign citizen theories, failed to call an expert witness, and misunderstood *Brady v. Maryland*, 83 S.Ct. 1194 (1963).

III.

To prevail on the ineffective assistance of counsel claim, Mr. Blake must show that Davis's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). He must establish that Davis's performance fell below "an objective standard of reasonableness" and he "made errors so serious that [he] was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687—88. Mr. Blake must also show a reasonable probability that Davis's ineffectiveness affected the outcome of trial. *Id*. at 689.

IV.

Mr. Blake would like the Court to find that an attorney's blindness is *per se* evidence of ineffective assistance. Such a ruling would be an overreach and, in fact, within the context of this case, erroneous. Despite his blindness, Davis, with the help of his assistant and Mr. Blake himself, was quite effective at trial. True, he was unable to see the displays of the government's exhibits, but he seemed to know them well. In any event, his theory of the case---which proved to be quite effective---was that Mr. Blake was just a naïve tax filer who believed what he saw on the internet. Under his theory, Davis had no need to challenge the government's documentary evidence: what appeared to be fraud on paper was merely a misguided attempt by his client to cash in his birthright estate. Under this theory, not being able to see the government's documents

wasn't detrimental to Mr. Blake, and as mentioned above, Davis was quite familiar with the documents being displayed. As for the fact that Davis was unable to observe the jury, Mr. Blake hasn't shown that had he been able to do so, there would have been a different outcome in the case. (Moreover, Mr. Blake assumes that blind people can't sense the reactions of others through other sensory receptors.)[2] Nor has he shown how Davis's reviewing discovery with him would have changed the outcome. After all, Mr. Blake had all the discovery in his possession and had reviewed it with his previous counsel.

Moreover, while Davis did not get from the government some of the documents—such as the IRS's letter deeming his second filing frivolous, a record of his calls to the IRS, and a copy of his Social Security statement---he does not explain how they would have made the difference in his case. Notably, he testified without the challenge from the government about any of these documents. At most, Mr. Blake has shown that Davis did not get evidence in support of some of his testimony, but given that this testimony was unchallenged, Davis's failure is a far cry from ineffective assistance of counsel.

Next, Mr. Blake seems to insinuate that Davis was incompetent because, shortly after the trial, the Court of Appeals for the Seventh Circuit banned him from appellate practice as a result of gross violations of court orders relating to the appellate procedures. Yet, the Seventh Circuit's displeasure with Davis in a different case cannot be automatically read into the instant case. *See United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377, 380 (7th Cir. 1976) ("[T]he subsequent disbarment of the counsel for reasons having nothing to do with the instant case [are] irrelevant

---

[2] Davis was effective in painting Mr. Blake as sincere, yet misled, tax filer, and it's quite possible that the jury took so long to reach the verdict---the trial lasted only several days---because of the holes punched in the government's case.

4

to his performance at petitioner's trial."). The Seventh Circuit had its reason for barring Davis, but those reasons aren't applicable here.

Mr. Blake further suggests that Davis was incompetent because he seemed to espouse sovereign citizen theories (such as birthright estate, the use of all capital letters in names to confer special rights, etc.). These are misguided beliefs, but it does appear that Davis was doing Mr. Blake's bidding before trial in pursuing some of these notions. Yet at trial, Davis was clear that any supposition of Moorish rights or sovereign citizen theories was nonsense: he spoke of Mr. Blake as having "crazy' and "misguided beliefs in this Moors" and living in a fantasy land. He referred to Mr. Blake's civil lawsuit grounded in Moorish presuppositions as "crazy and outrageous," and told the Jury the "Moorish thing" and "Moorish law" were "not correct." In summary, when Mr. Blake's actual freedom became an issue, even if Davis sympathizes with Moorish doctrines, none of this was apparent before the jury.

As for Davis not calling an expert witness, Mr. Blake is more concerned with the bumbling nature of Davis's decision or indecision, whatever it may have been, than with what the purported expert would have contributed to Mr. Blake's defense. In fact, Mr. Blake does not even explain who the supposed expert was or on what topic he or she is an expert.

Finally, Mr. Blake focuses on Davis's misunderstanding of *Brady*. Yes, Davis was requesting materials that could not be found (the proof of birthright estate and the meaning of capital letters on government checks---seemingly at the urging or with the consent of Mr. Blake) but this does not amount to an incompetent representation. Simply speaking, asking for something that does not exist did not prejudice Mr. Blake in this case.

V.

In summary, Mr. Blake has not shown that an evidentiary hearing is needed to ascertain his claims, let alone that his motion for a new trial should be granted. Therefore, the Court denies Mr. Blake's motion for new trial.

SO ORDERED on July 22, 2019.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE