UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br> )<br>    v. )<br> )<br>AIRRION S. BLAKE, )<br>    Defendant. ) | CAUSE NO.: 2:16-CR-074-JVB-JEM<br>              2:20-CV-362-JVB |

**OPINION AND ORDER**

This matter is before the Court on a Motion Under 28 U.S.C. § 2255[1] [DE 155] filed by Defendant Airrion Blake, without counsel, on October 8, 2020. The Government responded on November 6, 2020. Blake filed a reply on January 3, 2022. The Court appointed counsel for Blake on March 29, 2022. Blake, via counsel, filed a supplemental brief on June 22, 2022. The Government responded on August 12, 2022, and Blake replied on September 21, 2022. Blake argues that his trial counsel was ineffective during his representation of Blake.

For the reasons below, Blake's motion is denied. The request to litigate without prepayment is moot. Further, the request for an evidentiary hearing is denied, and the Court will issue a certificate of appealability.

**BACKGROUND**

Blake was charged in a two-count indictment of (1) making a false, fictitious, or fraudulent claim and (2) theft of government money. Blake was initially represented by an appointed attorney from the Federal Community Defenders' office. After Blake's arraignment, retained counsel John H. Davis appeared on behalf of Blake, and appointed counsel withdrew.

---

[1] The original motion was not signed, but Blake filed a signed supplement incorporating his unsigned motion on November 6, 2020.

At trial, which occurred in March 2018, Davis's defense of Blake centered on disputing that Blake had the knowledge necessary to be convicted of the offenses charged. Specifically, the defense was that Blake earnestly believed tax theories, shared on an online Yahoo group. This theory is that the Government sets up a trust for every individual in the amount of their lifetime earnings and that one can access the funds in one's trust by filling out IRS forms in a particular way. Thus, Davis argued under this defense, Blake did not believe he was defrauding the Government but instead believed that he was accessing his own property. At the end of the trial, the jury rendered guilty verdicts on both counts on March 22, 2018.

One week later, Blake filed a pro se motion for new trial in which he argued that Davis provided ineffective assistance. The Court denied that motion on July 22, 2019. Two days later, Blake, represented by new, appointed counsel, was sentenced to 36 months of imprisonment followed by two years of supervised release.

On August 5, 2019, Blake's sentencing counsel filed a notice of appeal. The Seventh Circuit affirmed Blake's sentence and dismissed without prejudice Blake's claim of ineffective assistance of counsel, with the claim being preserved for post-conviction review. *United States v. Blake*, 965 F.3d 554, 561 (7th Cir. 2020).

**ANALYSIS**

Title 28 section 2255(a) provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Relief under § 2255 is only appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre*

*v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). Blake argues that he should be granted relief under § 2255 for ineffective assistance of his trial counsel.[2]

Supreme Court case *Strickland v. Washington* provides the standard for ineffective assistance of counsel. 466 U.S. 668 (1984). This standard requires that "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003). The two parts of the standard are often called the "performance" prong and the "prejudice" prong.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

The performance prong is met if the challenger shows that counsel's representation "fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). The review of an attorney's performance is highly deferential to mitigate hindsight bias, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104 (internal quotation marks omitted). The *Strickland* analysis "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harris v. United States*, 13 F.4th 623, 630 (7th Cir. 2021), reh'g denied (Nov. 10, 2021) (quoting *Harrington*, 562

---

[2] Though Blake has already argued ineffective assistance of counsel in his new trial motion, the fact that the argument has already been heard (and decided against him) does not preclude him from revisiting those arguments in his § 2255 motion. *See United States v. Sheneman*, Nos. 3:10-CR-120 JD, 3:10-CR-126(2) JD, 3:14-CV-1733 JD, 2015 WL 22550247, at *21 (N.D. Ind. May 12, 2015) (finding neither procedural default nor law of the case prevented the defendant from arguing ineffective assistance of counsel in his § 2255 motion even though he had raised the issue in new trial motions).

3

U.S. at 110). The Court "will not presume deficient performance based on a silent record because [the Court] presume[s] counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption. *United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002).

The prejudice prong is met if the challenger shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694).

### A. Presumption of Adequate Performance

Blake challenges the adequacy of the representation he received from his trial counsel, John H. Davis. As noted above, caselaw dictates that judicial review of allegations of ineffective assistance of counsel begins with a strong presumption that counsel's actions constituted reasonable professional assistance. Here, though, the Court is presented with a relatively rare situation that requires the Court to more carefully consider whether the presumption is rebutted, is tempered, or remains in full effect.

On December 4, 2017, while Blake's criminal case was pending, the Seventh Circuit issued its decision in *Davis v. Anderson*, 718 F. App'x 420 (7th Cir. 2017), which contains the following discussion regarding Davis:

> Before concluding, we note that Davis's conduct in this litigation raises serious concerns about his professional competence. He repeatedly ignored the judge's simple instructions to file a complaint that complied with the federal rules. Even after the judge all but dictated what it would take to file a competent pleading, Davis returned with another bloated, unintelligible tome. Moreover, he told the judge that he was unable to communicate with his son except for exchanging an occasional greeting over the phone. That gives us reason to doubt whether [Davis's son] Eric even knows about this case, yet Davis named him as a plaintiff and holds himself out as his attorney. Davis's possible failure to communicate with Eric regarding the scope of the purported representation may violate Rule 1.4 of the Indiana Rules of Professional Conduct. And to the extent Eric's interests are not aligned with Davis's

4

>interests (or Shelia's [Davis's former wife, who was also a named plaintiff], for that matter), Davis may also be violating Rule 1.7 of the code of conduct.

*Id.* at 424-25. The court ordered Davis to show cause why he should not be removed or suspended from the practice of law before the Seventh Circuit or otherwise disciplined under Federal Rule of Appellate Procedure 46(b) or (c). *Id.* at 425.

On May 29, 2018, about two months after Blake's jury trial, the Seventh Circuit Court of Appeals removed Davis from that appellate bar due to "concerns about his professional competence" after receiving Davis's response to the show cause order. *In re Davis*, No. 17-1732, 2018 WL 11303648, at *1 (7th Cir. May 29, 2018). The court explained, "Davis's unwillingness or inability to respond to our unambiguous concerns about his professional competence—not to mention the concerns of the district judge—plainly establishes that he cannot adequately represent his own interests, let alone those of his clients." *Id.* at 2.

Here, the Court considers whether the strong presumption of professional competence is altered by the Seventh Circuit Court's assessment of Davis's professional competence. The initial questioning occurred during the time of Davis's representation of Blake, and Davis's removal from practice before the Seventh Circuit Court of Appeals followed shortly after Davis's representation of Blake concluded on May 23, 2018.

There is no per se rule that an attorney provided ineffective assistance of counsel when that attorney is suspended from the practice of law after trial "due to [their] neglect of other clients' legal matters." *Bond v. United States*, 1 F.3d 631, 637 (7th Cir. 1993). "[T]he subsequent disbarment of the counsel for reasons having nothing to do with the instant case [is] irrelevant to [counsel's] performance at petitioner's trial." *United States ex rel. Ortiz v. Sielaff*, 542 F.2d 377, 380 (7th Cir. 1976). In *Ortiz*, the disbarment was "for accepting fees without providing services for other clients" and not connected to the attorney's competence to act as legal counsel. *Id.*

5

Disciplinary actions or investigations into counsel are relevant only where they are linked to attorney error in the case in which ineffective assistance is alleged. *Bond*, 1 F.3d at 637; *see also Hardamon v. United States*, 319 F.3d 943 (7th Cir. 2003) (finding attorney's probationary status and lack of its disclosure did not render the attorney's performance deficient where the habeas petition failed to demonstrate any relation to errors at trial). *Id.* at 951.

Caselaw is clear that the disciplinary measures taken against Davis do not mandate a per se finding of ineffective assistance of counsel. What is less clear, though, is whether the presumption of professional competence is rebutted or tempered by the Seventh Circuit's questioning and ultimate finding that Davis lacked professional competence and removed him from the appellate bar. The theme that emerges in the cases considering disciplinary proceedings contemporary to criminal representation is that the conduct in the criminal matter is controlling and specific connection to the disciplinary proceeding is needed for the disciplinary proceeding to be considered. Accordingly, the Court finds that the strong presumption of professional competence has not been rebutted and remains undisturbed and unaltered. Even so, the Court considers this question to be a matter on which reasonable jurists could reach a different conclusion, so a certificate of appealability will issue on this basis.

**B. Procedural Missteps**

Blake argues that Davis's procedural missteps show that his performance fell below acceptable standards. Blake points to motions filed on August 14, 2017, and August 17, 2017, in support. These motions are at Docket Entries 28 and 39, respectively. Blake asserts that Docket Entry 28 violates Federal Rule of Criminal Procedure 16 and appears to show that Davis bought into Moorish thought. Blake contends that Docket Entry 39 demonstrates Davis's lack of

understanding of the determination of probable cause, the Government's *Brady* obligations, and counsel's due diligence responsibilities.

1. Docket Entry 28

Docket Entry 28 is titled "Motion/Request for Discovery." Magistrate Judge John Martin addressed the motion at the final pretrial conference held on August 18, 2017, ordered the parties to discuss the request, and allowed Blake to file a reply fully laying out his arguments if necessary. No reply came, and Judge Martin ultimately denied the motion, permitting Blake to "[bring] before the court with specificity" any outstanding evidentiary concerns. (Order, ECF No. 51).

Blake argues that the motion does not comply with Federal Rule of Criminal Procedure 16 regarding discovery, but Blake has not shown how he was prejudiced by this. Blake also asserts that paragraph 24 of the motion appears to show that Davis agreed with Moorish thought. That paragraph is:

> 24. Identify the unique *numbered* trust account from which the UPPERCASE trust funds were taken, in that, the check made out to defendant was made in an UPPERCASE (ALL CAPS) manner such that it can be identified from a unique account which the Government has authority and opportunity to ascertain and submit such trust account number to the defendant.

(Mot. Disc. ¶ 24, ECF No. 28 (formatting in original)). While this request reflects the incorrect understanding of tax law on which Blake's defense of lack of knowledge is based, it is a step too far to conclude from this that Davis bought into the misunderstanding. Davis made clear at trial that the tax theory Blake pursued in his IRS filings was incorrect. (Tr. 462:10-16, ECF No. 104). Further, Blake does not explain how his defense was prejudiced by the paragraph. The Court rejected this argument when Blake raised it in his motion for a new trial, and the Court rejects it again now, finding no prejudice to Blake.

2.     Docket Entry 39

Docket Entry 39 is titled "Motion to Dismiss and Affirmative Defense of Entrapment." In denying the motion on December 21, 2017, the Court noted that Blake requested dismissal of the indictment by arguing that the Government lacked probable cause. The Court rejected this argument as a non-starter because probable cause findings are entrusted to grand juries. Blake, via Davis as counsel, also argued that dismissal was proper because the Government did not comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Blake asserted that the Government failed to request and disclose certain information that would have supported Blake's theory of the case. The Court rejected this argument because Blake failed to show Government suppression of any evidence or that Blake lacked access to the purported evidence that he sought. Blake's final request in Docket Entry 39 was for a jury instruction on entrapment, which the Court denied because Blake had not submitted evidence of Government inducement.

Though the motion failed on all arguments, Blake has not shown how he was prejudiced by Davis presenting these arguments to the Court in the motion to dismiss. It is not as if Blake is arguing that Davis failed to ask for dismissal on grounds that would have succeeded, where prejudice would be apparent. With no prejudice shown, the above arguments fail to show ineffective assistance of counsel for filing a motion that failed. The argument that Davis misunderstood his due diligence responsibilities and the Government's *Brady* obligations and the argument that Davis should have obtained a jury instruction on entrapment will be addressed below.

## C. Discovery

When representing a criminally charged client, an attorney is obligated "to look into the facts of the case and to assess potential defenses." *Meyers v. Gomez*, 50 F.4th 628, 642 (7th Cir.

2022). When arguing for relief under § 2255 for counsel's failure to investigate, a petitioner must provide "sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon*, 319 F.3d at 951 (quoting *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)). Still, it is a rare case when counsel's failure to investigate or call a specific witness will amount to ineffective assistance; counsel has no burden to pursue every possible lead before choosing a defense. *Jennings v. United States*, 461 F. Supp. 2d 818, 828 (S.D. Ill. 2006) (citing *Sullivan v. Fairman*, 819 F.2d 1382, 1988-93 (7th Cir. 1987)). Because the Court starts with a strong presumption of effectiveness, the Court also begins with the presumption that Davis's decisions during discovery were part of a sound trial strategy, even without an articulation of his strategy by Davis. *Meyers*, 50 F.4th at 645 (citing *Strickland*, 466 U.S. at 689). However, where there is no indication counsel investigated a particular witness, the failure to call that witness is "more likely to be a sign of deficient performance" than would be the case if counsel had investigated that witness. *Id.* at 642.

    1.    <u>Misunderstanding of *Brady*</u>

As a more over-arching matter, Blake argues that Davis misunderstood *Brady v. Maryland* and what obligations that case places on the prosecutor. 373 U.S. 83 (1963). The trial record supports Blake. It shows that Davis misunderstood of *Brady*, incorrectly thinking that the prosecutor had an affirmative duty to actively seek out exculpatory evidence that Davis could have pursued himself. (Tr. 247:14-248:16, 249:12-253:20, ECF No. 103). The prosecutor's duty to simply turn over exculpatory evidence if the prosecutorial team is in possession of it. *United States v. Gray*, 648 F.3d 562, 566 (7th Cir. 2011); *see also United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) (holding there is no suppression of evidence in violation of *Brady* when the evidence is accessible to the defendant before trial through the exercise of reasonable diligence). On this

evidence, the Court is willing to assume that Davis's performance fell below the acceptable standard for discovery matters that Davis could reasonably have sought from governmental entities. This is because it appears Davis chose not to seek items in discovery on the mistaken belief that the Government would need to seek out and disclose all exculpatory evidence. However, prejudice must still be shown in order to establish that Davis provided ineffective assistance of counsel, so the Court's analysis continues.

### 2. Failure to Subpoena Government Documents

Blake argues that Davis was ineffective because he did not attempt to subpoena the Social Security Administration or the IRS for copies of recorded contact between Blake and those agencies. Blake asserts that records of contact with the IRS would corroborate Blake's defense based on lack of knowledge and further corroborate why he wrote "void where prohibited by Law" on his 1041 tax form. Blake maintains that a copy of Blake's Social Security Statement would support Blake's explanation of the income amount listed on the 1041 form.

As to Blake's contact with the IRS, Blake argues that proof of this contact would have corroborated Blake's statement that he was advised to write "void where prohibited by law" on his 1041 tax form. At trial, the Government agreed that Blake called the IRS about his 1041 form and did not challenge Blake's testimony that the IRS representative he spoke with instructed him to put "void where prohibited by law" on the form "and if it's wrong, [the IRS is] not going to process it." (Tr. 369:10-370:1, ECF No. 103). The only evidence was that the IRS advised Blake as Blake testified. There is no reasonable probability that introduction of proof of this IRS contact at trial would have changed the outcome of Blake's trial, so there is no prejudice.

Regarding the Social Security Statement, the Court finds no prejudice from the failure to get the statement from the agency. Blake testified to how he used the number from the Social

10

Security Administration to determine what number to place on his 1041 form. (Tr. 346:8-17, 411:20-25 ECF No. 103). This testimony was corroborated by Special Agent Jason Bushey, who testified for the prosecution. (Tr. 216:23-218:6, 221:7-13, 239:13-25, ECF No. 103). There was no real dispute that Blake derived the income amount listed on his charged 1041 form from his Social Security Statement. There is no prejudice from Davis's failure to obtain a copy of the statement.

To the extent that Blake is asserting ineffective assistance for failure to obtain a copy of the recording of Blake's interview with the IRS, the evidence shows that the "recording" of the interview is the "memorandum of interview." (Tr. 261:20-22, ECF No. 103). There is no evidence that an audio or video recording exists. There is no prejudice for failing to attempt to obtain something that does not exist.

### 3. Failure to Investigate Witnesses Through the IRS

Blake asserts that Davis should have investigated the IRS employee and supervisor who approved his 1041. Because Blake has not explained how the results of any investigation into these individuals would have changed the trial income, Blake has failed to show prejudice.

Blake also maintains that Davis should have investigated other filers who submitted tax forms under the same theory as Blake. Blake contends that evidence of other filers who succeeded would help show how a person such as Blake could be convinced of the theory's validity, thereby bolstering Blake's defense theory that he did not have the knowledge necessary to commit the offenses charged.

The Government responds that evidence of these other filers would be inadmissible under Federal Rules of Evidence 401 and 403. Under Rule 401, any such evidence would be admissible as tending to make Blake's requisite level of knowledge more or less probable. Under Rule 403, the Court would have balanced the probative value of the evidence versus the likely harm that

11

would result from the admission of it into evidence. And, under this analysis, the Court would have been inclined not to admit the evidence. Blake's *subjective* knowledge was at issue, not whether, *objectively*, Blake's alleged lack of knowledge was reasonable. That others filed with the IRS using the same theory does not directly speak to Blake's subjective knowledge of the incorrectness of his tax form. There is no sign that Blake received actual confirmation of any specific filer's success under the tax theory at issue, instead, the indication is that Blake read on the internet that it was a legitimate theory and read other people's assertions that the theory had worked for them.

If Blake was unaware of a specific filer's success, the fact of that success is not particularly probative. Further, this evidence could confuse the issues, perhaps leading the jury to consider whether it is fair to convict Blake (for an offense that they in their factfinding capacity believe that he had committed) when others who displayed the same conduct went unprosecuted. This evidence would also be fairly cumulative with other evidence that was introduced at trial, including Blake's testimony that he believed he was following a legitimate tax theory because of what he learned on the Yahoo group: "[i]t was actually other people that were telling this story that said that they did it," so—through testimony—there was already a suggestion (which, according to the defense, Blake believed) of others succeeding. (Tr. 357:23-24, ECF No. 103). Because the Court would likely have sustained a Rule 403 objection, there is no reasonable probability of a different outcome had Davis obtained evidence of other filers who succeeded under the same tax theory used by Blake. The prejudice prong is not met.

    4.    Failure to Investigate Blake's Contact with an Accountant

Blake faults Davis for not investigating and using at trial evidence that Blake spoke with an accountant, Willie Dover, regarding the "trust fund" theory on which Blake's defense was based. The Court's assumption of prejudice for the misunderstanding of *Brady* does not extend to

this argument because there is no governmental connection to this conversation and there is no reason to think that the Government would have been aware of or had evidence of the existence of this conversation, so Davis's misunderstanding of *Brady* played no role here.

Blake, in his Supplemental Affidavit, mentions matters he discussed with Davis or that he requested Davis to investigate regarding his case. Absent, though, is an indication that Blake informed Davis of his conversation with Dover. Without reason to impute to Davis knowledge of the conversation between Blake and Davis, Blake has not shown that Davis performed inadequately. *See Long v. United States*, 847 F,3d 916, 922 (7th Cir. 2017) ("'[W]hen determining the reasonableness of trial counsel's investigation,' we 'consider what [the defendant] told trial counsel.'" (quoting *Koons v. United States*, 639 F.3d 348, 354 (7th Cir. 2011)) (alterations in original)).

Even if there were a suggestion in the record that Davis knew of Blake's conversation with Dover, the affidavit of Blake's current counsel reveals that Dover told Blake he "had no idea about what Mr. Blake was talking about," so if Dover had testified, a jury could have viewed the testimony as evidence that Blake knew that the tax theory Blake espoused was not legitimate. (Aff. Kupsis ¶ 5, ECF No. 172-2). It would be a reasonable strategic decision to not put such testimony before the jury for consideration. Finally, Blake testified at trial that he did not consult a "legitimate tax preparer" regarding his charged return. (Tr. 359:2-8, ECF No. 103). Introduction of Blake's conversation with Dover would have undercut Blake's credibility. Davis's performance here did not fall below the acceptable standard.

Thus, despite Davis misunderstanding *Brady*, the Court finds that Blake has not shown that he was prejudiced by the misunderstanding, nor has he shown that he received ineffective assistance of counsel through Davis's actions and decisions made during discovery.

**D. Trial**

Blake asserts that Davis provided inadequate performance by not introducing evidence at trial that Blake was trying to avoid destitution. At trial, the Government asked Blake if he struggled to make money during a period in which he was self-employed before and at the time that he filed the tax form at issue.[3] (Tr. 354:2-13, ECF No. 103). Blake replied in the negative, indicating that at that time he had a profitable business. *Id.* at 354:14-16. In light of Blake's sworn testimony that he was not experiencing financial difficulties, it was reasonable, from a strategic standpoint, not to present evidence to the contrary, as it could reflect negatively on the jury's opinion of Blake's credibility and provide evidence tending to show that Blake perjured himself.

Blake also contends that Davis should have done more to dispute the knowledge element that the Government had to prove at trial. Consistently throughout the trial (in proceedings both in front of and outside the jury's presence), Davis returned to his chosen defense: that Blake did not act with the knowledge necessary to commit the offenses charged. *See, e.g.*, (Tr. 107:3-10, 136:15-17, 165:9-15, 265:20-24, 270:23-271:8, 455:23-25, ECF Nos. 102-104). Blake testified about his knowledge, too, when he explained how he became familiar with the Moorish tax law theories, his acceptance of those theories, and the actions he took upon learning them. *See, e.g.*, (Tr. 280:10-14, 281:24-282:9, 284:16-23, 290:17-291:2, 312:19-25, ECF No. 103).

Though Blake maintains that Davis should have admitted into evidence Moorish Nation literature regarding the incorrect theories at issue, it remains unclear what literature Blake believes should have been admitted and whether the Court would have allowed it. Blake testified that his exposure to the theories came through a Yahoo group whose name he could not remember and whose members he did not personally know. *See* (Tr. 282:25-283:12, 291:11-13, 312:23-25,

---

[3] In his supplement, Blake asserts, without citation to evidence, that he "testified at trial that he was in desperate financial straights [*sic*]." (Suppl. at 10, ECF No. 172). The Court places no weight on this unsupported statement.

357:20-358:1, 358:13-359:1, 367:10-22, 370:2-4, 389:10-12, ECF No. 103). Further, Blake states in his supplemental affidavit: "I made it clear [to Davis] that I was not a member or otherwise associated with the Moorish Science Temple." (Blake Suppl. Aff. ¶ 2, ECF No. 172-1). What a client tells counsel is relevant when evaluating counsel's performance. *See Long*, 847 F.3d at 922. Under these circumstances, Davis's failure to seek admission of unspecified "Moorish Nation literature" was an objectively reasonable decision and does not reflect inadequate performance.

Though Blake insists that Davis should have presented an entrapment defense, Davis already had a defense that he was pursuing: Blake's lack of the requisite knowledge. Though there may be an obligation to present a certain defense if it is the only defense available, *Keys v. Duckworth*, 761 F.2d 390, 392 (7th Cir.1985) ("[T]he decision to forego what may be the only available defense can fall below sixth amendment standards."), that is not the case here, where another defense was available. *See Benabe v. United States*, 68 F. Supp. 3d 858, 865 (N.D. Ill. 2014) ("[C]ounsel's decision [whether] to pursue alternative strategies 'falls withing the wide range of reasonable professional assistance.'" (quoting *Strickland,* 466 U.S. at 689)). Davis's chosen defense was a strategic decision, and the Court does not find his performance deficient for failing to also pursue the entrapment defense, especially since Blake has not identified what evidence would have entitled Blake to an entrapment jury instruction.

Blake further submits that Davis's performance as counsel fell below the acceptable standard because he failed to have a contemplated expert witness testify. The expert would have testified on the concept of "garbage in, garbage out" in relation to information gathered from computer resources. Blake admits that "[t]his expert testimony did not seem to be supportive of defendant's case and the same concept could have been derived through cross examination through any of the witnesses who relied upon the computer information submitted." (Suppl. at 12, ECF

No. 172). Given Blake's admission, the Court finds that no prejudice has been shown by the failure to subpoena this expert witness to testify. *See also Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." (citing *Harrington*, 562 U.S. at 104)).

### E. Communication

Blake next argues that Davis failed to meaningfully discus the case's investigation with Blake. Blake notes that, contrary to Blake's request, Davis did not try to subpoena the Social Security Administration or the IRS to obtain records of contact between Blake and those agencies or other documents to support Blake's defense.[4] It is clear that Davis did not go about building Blake's defense in the manner that Blake would have chosen. However, Blake's Supplemental Affidavit provides insight into Davis's rationale for selecting his chosen path: Davis explained in pretrial conversation with Blake that Davis intended to use Blake's previously filed civil suit in support of the theory that Blake genuinely believed in the legitimacy of the incorrect tax theory under which Blake filed his charged return. (Blake Suppl. Aff. ¶ 8, ECF No. 172-1). Davis ultimately elicited testimony from Blake on this point and admitted documents from the civil case into evidence. (Tr. 294:24-296:22, 334:6-7, 341:14-342:23 ECF No. 103). A failure to pursue Blake's preferred route in support of his defense theory of lack of knowledge does not mean that Davis did not adequately communicate with Blake.

Blake also maintains that Davis did not adequately prepare Blake to testify at trial. However, "conclusory allegations regarding the time spent in consultation with . . . trial counsel" do not, alone, establish that a person received inadequate assistance of counsel. *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988). The Government does not dispute Blake's contention

---

[4] As addressed above in the section regarding discovery, the Court has found that failure to subpoena the agencies was not ineffective assistance of counsel.

16

that Davis did not meet with Blake from August 2017 until two weeks before trial in March 2018. Accepting this as true, Blake has still failed to provide argument on how he was prejudiced by this gap in communications.

### F. Visual Impairment

It is a matter of record that Davis was experiencing vision difficulties at the time of Blake's trial. (Tr. 3:15-4:5, 21:6-19, ECF No. 102). This was accommodated by Davis's paralegal being available at trial to read material to Davis and guide him around the courtroom. *Id.* Blake asserts that Davis "could not see the information being provided to understand the constitutional implications or legal strategy if any needed by his client." (Mot. at 14, ECF No. 155). The understanding of legal implications and devising of legal strategy do not depend on having typical visual capabilities. Davis's difficulties in visual perception were addressed by his paralegal's assistance. As the Court reported in its denial of Blake's motion for new trial, Davis knew the Government's exhibits and was quite effective at trial. (Op. & Order, at 3, ECF No. 126). The Court refuses to find that, by definition, accommodated visual impairments disqualify a lawyer from providing effective assistance to their clients. Blake has not shown inadequate performance by Davis due to his vision impairments.

### REQUEST FOR EVIDENTIARY HEARING

Blake requests an evidentiary hearing on his motion, but no motion is necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing on a claim of ineffective assistance of counsel is appropriate if a petitioner has alleged facts that, if true, entitle them to relief. *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). The allegations must be "detailed and specific" rather than "vague, conclusory, or palpably incredible." *Id.*

Here, no evidentiary hearing is necessary. Blake's arguments have been fully addressed above, and their resolution do not depend on disputed facts or detailed and specific allegations that need to be supported with evidence. Therefore, the Court denies the request for an evidentiary hearing.

### REQUEST TO PROCEED WITHOUT PREPAYMENT

Because no filing fee is required for a § 2255 motion, the Court denies as moot Blake's request to proceed without prepayment.

### CERTIFICATE OF APPEALABILITY

Section 102 of the Anti-Terrorism and Effective Death Penalty Act provides that a certificate of appealability may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473 (2000).

As noted above, the Court issues a certificate of appealability on whether the presumption of effective assistance should be found to be rebutted, tempered, or otherwise altered by the show cause order and ultimate disbarment of Davis from practice before the Seventh Circuit Court of Appeals.

### CONCLUSION

Based on the above, the Court hereby **DENIES** the Motion Under 28 U.S.C. § 2255 [DE 155], **DENIES** the request for evidentiary hearing, **DENIES as moot** the request to proceed without prepayment, and **ISSUES** a Certificate of Appealability regarding what, if any, effect the Seventh Circuit's questions on Davis's professional competency and ultimate removal from

practice have on the presumption of adequate performance by counsel when evaluating Blake's claims of ineffective assistance of counsel.

SO ORDERED on June 29, 2023.

s/ Joseph S. Van Bokkelen<br>
JOSEPH S. VAN BOKKELEN, JUDGE<br>
UNITED STATES DISTRICT COURT